**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HANNAH RULLO, )
)
      Plaintiff, ) Civil Action No. 17-1380
) Magistrate Judge Maureen P. Kelly
      v. )
) Re: ECF No. 47
UNIVERSITY OF PITTSBURGH – OF THE )
COMMONWEALTH SYSTEM OF HIGHER )
EDUCATION, *A Commonwealth of* )
*Pennsylvania Non-Profit Corporation*, )
)
      Defendant. )

## <u>OPINION AND ORDER</u>

**KELLY, Magistrate Judge**

Plaintiff Hannah Rullo ("Rullo"), a former law student at the University of Pittsburgh, commenced this action against Defendant University of Pittsburgh – of the Commonwealth System of Higher Education ("the University"), alleging that the University violated her rights to be free of gender bias, retaliation, and hostile environment under Title IX, 20 U.S.C. § 1681(a). Rullo's claims arise out of the University's alleged mishandling of her Title IX complaint and her allegations of assault and battery against a fellow law student.

Presently before the Court is the University's Motion for Summary Judgment, ECF No. 47, seeking the entry of judgment in its favor as to each of Rullo's claims. For the reasons that follow, the Motion for Summary Judgment is denied. [1]

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings. ECF No. 16.

# I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

On September 2, 2016, Rullo was arrested and charged with simple assault by City of Pittsburgh police officers after a physical altercation with Leonel Mendieta ("Mendieta"), a fellow law student she had dated for approximately one year.  ECF No. 46 ¶ 20, ECF No. 53 ¶ 17. Mendieta sustained facial bruising and a bloody nose in the incident.  Despite Rullo's assertion that Mendieta was the aggressor, he was not criminally charged.[3]  Rullo alleges that as a result of the assault, she suffered injuries to her face and body.  Medical personnel photographed her injuries the following day after Rullo was released from police custody and went to a local hospital for treatment.  ECF No. 74 ¶ 27.  Rullo and Mendieta each sought and obtained Protection from Abuse Orders on September 6, 2016.  Id.¶ 26, ECF No. 46-1 at 97-106.  The Orders permitted each student to attend classes at the Law School but otherwise required them to have no contact.

Mendieta reported the altercation to Kevin Deasy ("Deasy"), the Law School's Associate Dean of Students and Title IX point of contact.  ECF No. 68 ¶ 9, ECF No. 52-1 at 23.  Deasy contacted Rullo on September 6, 2016 to set up a meeting for the following day to discuss the incident.  ECF No. 48-1 at 57.  Rullo alleges that during the meeting, Deasy made several statements that she categorizes as discriminatory based upon her gender.  ECF No. 77 at 3.  Deasy advised Rullo that "[Mendieta] told him everything, so there is no need to lie to him," and that Rullo "was 'not a victim'" and "should stop acting like a victim."  ECF No. 74 ¶ 37.  Deasy instructed Rullo that "she needed to take a leave of absence, and stated that she was 'making a scene intentionally' in showing her bruises."  Id. ¶¶ 37-38, 42-43.  Additionally, "Dean Deasy told

---

[2] Unless otherwise indicated, the factual background is derived from the undisputed evidence of record.  Disputed evidence is viewed in the light most favorable to Rullo, as the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.").

[3] The criminal charge against Rullo was dismissed on March 29, 2017.  ECF No. 74, ¶ 24; ECF No. 74-1 at 23.

Plaintiff that he 'would forget' that Hannah had any absences for the week if she stayed away from the school and 'did not cause a spectacle with [her] face." Id.  Deasy denies each of these allegations and states he sought to reassure Rullo that the University would address her concerns, and he directed her to the University's Title IX office for assistance.  Id.

Later that day, Rullo spoke with Kristy Rzepecki ("Rzepecki"), the University's Senior Title IX and Diversity Specialist.  ECF No. 46 ¶ 14, ECF No. 74 ¶ 45.  Rzepecki scheduled a meeting with Rullo and her criminal defense attorney.  Rullo attempted to attend class but was stopped by University police officers who informed her that because of the Protection from Abuse Order entered against her, she was not allowed on the Law School campus or to attend class.  Id. ¶ 47.  Rullo reminded the officers of the exemption for education but they refused her entry.  Rullo reported this incident to the University, and Deasy assured her that she was permitted to attend classes without restriction.  Id. ¶ 49; ECF No. 74-1 at 20.

Rullo attended her scheduled meeting with Rzepecki and Katie Pope ("Pope"), the University's Title IX Coordinator, on September 9, 2016.  ECF No. 46 ¶ 11, ECF No 74 ¶ 50.  Rullo was accompanied by her legal counsel and contends she brought a completed Title IX complaint form to the meeting to initiate charges against Mendieta.  Id. ¶¶ 60-61.  Rullo states that Rzepecki discouraged her from submitting the form, and then failed to act upon the complaint until she submitted a second complaint on September 27.  Id. ¶¶ 62, 98-101.  The University disputes Rullo's allegations, and states that during the meeting, Rzepecki provided Rullo with a complaint form and explained the Title IX complaint and investigation process, and the possible sanctions that could be imposed.  Id.; see also, ECF No. 48-1 at 132.

On September 16, 2016, the University's Title IX office issued a "no contact order" to both Mendieta and Rullo, instructing them that they must "cease and desist from any intentional contact

with one another." ECF No. 46 ¶ 24. Despite these measures, Rullo alleges she experienced a hostile educational environment at the Law School that the University failed to ameliorate. In particular, the designated Title IX officials failed to address intimidating conduct by Mendieta and his friends who congregated outside a classroom to block her entrance, or who stared at her during class, which frightened her. Mendieta's friends also passed around a copy of Rullo's mugshot and at one point, during a class taught by Deasy in which both Mendieta and Rullo were enrolled, Deasy placed a project sign-up sheet in front of Mendieta's desk, requiring Rullo to stand in front of him while he glared at her. ECF No. 52-1 ¶¶ 20-26. Rullo alleges that she reported these incidents to Rzepecki but was treated dismissively, with Rzepecki accusing her of lying about the mugshot incident and instructing Rullo "to stop using social media because Mendieta did not like it and … to stop posting quotes supportive of feminism." ECF No. 52-1 ¶¶ 27-28.

The University denies that Rzepecki made any disparaging statements and states that she investigated each of Rullo's complaints but was unable to corroborate any allegations of intimidating or hostile conduct by Mendieta or his friends. ECF No. 74 ¶¶ 69-80.

Rullo alleges that the University's failure to address instances of intimidation caused her to suffer anxiety to such a degree that she contacted Deasy to discuss the possibility of taking a leave of absence. Id. ¶¶ 82-83. Immediately after scheduling this meeting, Rullo received notification from her student loan provider that because she was no longer a full-time student, she was required to begin repayment. Id. 85-88. The University denies that it played any role in adjusting her status to trigger the student loan repayment notification. Id.

Rullo met with Deasy on September 22, 2016, and was accompanied by Professor Judith Teeter ("Teeter"). Rullo alleges that Deasy repeated his admonition that she was not a victim and informed Rullo that the Title IX office determined "that she was 'guilty,'" and that he believed

Mendieta "would never 'do this.'" Id. ¶¶ 90-94. During the meeting, Teeter expressed her strong opposition to Rullo taking a leave of absence and her belief that Mendieta should be viewed as the aggressor. Id. ¶ 95. Rzepecki subsequently interviewed Teeter. Teeter relayed that Rullo was friends with her daughter and that Teeter believed Rullo wouldn't lie. ECF No. 52-1 at 103-105. Teeter stated that the Law School's reaction "made people believe[] him – he was the victim" and Teeter was upset that the Law School didn't accommodate both students. Id. Teeter additionally reported that on one occasion, Mendieta and his friends were by a door "trying to intimidate [Rullo]." Id.

On September 26, 2016, Rullo learned that the Title IX office "did not believe" she had submitted a Title IX complaint. ECF No. 52-1 ¶ 32. Rullo was directed to submit a complaint in order to commence an investigation into her allegations. The University contends that it first received Rullo's Title IX Complaint on September 27, but that it had inquired into her allegations over the prior three weeks and had issued interim measures since first learning of the September 2nd incident. ECF No. 74 ¶ 102.

On September 29, 2016, Rullo was provided a list of alternative courses to substitute for her class with Deasy and Mendieta, and attended a meeting with Pope, Deasy, and Law School Dean John Burkhoff. ECF No. 52-1 ¶ 33. At the meeting, Rullo also received a list of options relative to her student status, including a leave of absence. Rullo contends that Deasy stated her best option was a leave of absence and that she felt forced to take a leave "due to the University's actions and inactions in response to her Title IX complaint." ECF No. 74 ¶ 106. Rullo contacted Deasy on October 3 and notified him of her intention to take a leave of absence. ECF No. 52-1 ¶¶ 33-34. The University contends that it offered other alternatives, but that Rullo rejected each as "not 'viable.'" ECF No. 74 ¶ 104.

After withdrawing from school, Rullo remained in contact with Rzepecki and provided documentation of her diagnosis of post-traumatic stress disorder related to the Mendieta incident. Rullo contends that Rzepecki did not consider this information as evidence of Mendieta's alleged assault or the impact of the harassment and hostility Rullo faced on the University campus. Rullo also complained to Rzepecki that she learned a former classmate was circulating an old photograph of her in a revealing Halloween costume to other law students. Rullo alleges that Rzepecki stated "[w]hy do you girls dress up like that? What do you expect?" Id. ¶¶ 107-111. Rullo alleges that Rzepecki accused Rullo of lying and expressed impatience at Rullo's allegations by sighing and rolling her eyes. Id. ¶¶ 117-120. Rzepecki denies making these statements or communicating disapproval and contends she investigated Rullo's allegations of intimidating or harassing behavior by speaking with individuals identified by Rullo as witnesses, but none could substantiate Rullo's complaints. Id. ¶¶ 112, 117-120.

Mendieta cross-filed a Title IX complaint against Rullo on October 14, 2016. Id. ¶ 113. Rullo finds fault with the University's failure to consider his complaint retaliatory. The University responds that "it is not unusual for both parties involved in an alleged dating violence incident to each file Title IX Complaints against one another." Id.

The University proceeded with its investigation of both complaints simultaneously. In all, Rzepecki met with Rullo at least five times and met with Mendieta three times. ECF No. 46 ¶¶ 22, 23. Rullo provided the University with court records, medical records, and other evidence in support of her claims of gender discrimination, as well as the names of relevant witnesses. ECF No. 74 ¶ 121. Rzepecki states she interviewed individuals identified by both parties as witnesses, but none could substantiate Rullo's allegations of intimidation or gender-based bias at the Law School. ECF No. 48-1 at 140-142; ECF No. 74-1 at 14. Three individuals were not interviewed

because Rzepecki and Pope determined that two did not have direct evidence of the matter being investigated, and one failed to respond to a request to be interviewed. ECF No. 53 ¶¶ 43-45. After preparing a preliminary report, the University provided Rullo and Mendieta an opportunity to review and respond to the proposed factual findings. Mendieta offered no changes, and Rullo submitted a response disputing the investigation process and factual conclusions as biased and improper. ECF No. 48-1 at 190-96. Rullo further objected to the report's exclusion of Teeter's corroboration of her report of intimidation by Mendieta and his friends as an example of the biased investigation of her claims. Id. at 196.

The University's Title IX office completed its investigation and submitted its report to the University Vice Provost and Dean of Students. ECF No. 46 ¶¶ 34-35. The University found in favor of Mendieta's Title IX complaint against Rullo and further concluded that she violated the Student Code of Conduct related to Dating Violence. Id. ¶ 122. On April 3, 2017, the University Vice Provost and Dean of Students notified Rullo that (1) she was suspended from the University for the remainder of the Spring 2017 semester; (2) she would need to meet with the Title IX Office to schedule training workshops prior to her return to the University; (3) she would be placed on Disciplinary Probation for the remainder of her time at the University; (4) if Rullo was found responsible for another Title IX incident, she would be expelled; and (5) the No Contact Orders between Rullo and Mendieta would remain in place. ECF No. 46 ¶ 35.

Rullo unsuccessfully appealed the Title IX investigation findings with the University Review Board. She ultimately decided not to return to the Law School and enrolled at a Florida Law School, where she completed her studies. Id. ¶¶ 36-42.

Rullo alleges that in conducting its investigation and in disciplining her, the University discriminated against her on the basis of gender, and that it was deliberately indifferent to her

known sexual harassment and sexually hostile environment. Rullo further alleges that the University retaliated against her for filing her Title IX complaint. ECF No. 52-1 ¶¶ 41-44. As a result, Rullo states she was forced to leave the Law School and lost educational opportunities, and that these steps delayed her graduation and caused economic damages. Id. ¶¶ 45-46.

Rullo commenced this action alleging claims against the University for gender bias in its response to her complaints (Count I), hostile environment (Count II), and retaliation (Count III), all pursuant to Title IX. Discovery is complete and the University has filed the pending Motion for Summary Judgment as to each of Rullo's claims. The parties have filed a Joint Concise Statement of Material Facts, ECF No. 46, and separate concise statements of material facts, exhibits, and responses thereto, ECF Nos. 48, 52, 53, 61, 68, 70 and 74. The parties have also filed briefs in support and in opposition to the Motion for Summary Judgment, ECF Nos. 49, 62 and 77. The Motion for Summary Judgment is now ripe for consideration.

## II.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof"). Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

## III.    DISCUSSION

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities." Doe v. Columbia Univ., 831 F.3d 46, 53 (2d Cir. 2016) (citing Yusuf v. Vassar Coll., 35 F.3d 709, 714–15 (2d Cir. 1994)); see A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 805 (3d

Cir. 2007). Accordingly, the United States Supreme Court has held that Title IX's ban on "discrimination" encompasses claims for sexual harassment and retaliation, and private rights of action are implied for both forms of discrimination. See Franklin v. Gwinnett Cty Pub. Sch., 503 U.S. 60, 75-76 (1992) (acknowledging private right of action for sexual harassment); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-84 (2005).

In this instance, the University does not dispute that Title IX applies to Rullo's claims arising out of her status as a University law student. The University contends, however, that based upon available and admissible evidence, Rullo is unable to establish the necessary elements of her Title IX claims and the University is entitled to the entry of judgment in its favor as a matter of law.

## A. Count I - Gender Discrimination

The University frames Rullo's Title IX gender discrimination claim as arising out of the investigation and resolution of disciplinary proceedings against her. ECF No. 49 at 8-14. However, in the Complaint, Rullo alleges gender discrimination based upon "its deliberate indifference to known acts of gender discrimination," unrelated to the disciplinary proceedings. ECF No. 1 ¶ 55. Such acts include:

> the decision to not address Plaintiff's complaints while she attempted to attend classes at the law school following the assault and battery complaint; Defendant University's deliberate decision not to provide Plaintiff with safety measures and accommodations so that she could safely pursue her studies; Defendant University's deliberate decision not to take seriously Plaintiff's complaints about the treatment by Mendieta, treatment by Mendieta's associates and supporters, and treatment by Dean Deasy and Ms. Rzepecki; … and Defendant University's deliberate decisions to do nothing to eliminate the risk of harm posed by Mendieta and Mendieta's associates and supporters, prevents its recurrence and address its effects.

Id. Rullo alleges that due to the University's deliberate indifference to her allegations of gender discrimination, she had no choice but to leave the Law School. Id. ¶ 56.

In support of its Motion for Summary Judgment, the University further argues that to the extent that Rullo's claim of gender discrimination is based on a deliberate indifference theory, this claim fails because Rullo has only complained about alleged statements and conduct by Deasy and Rzepecki and the University argues that none of these statements or conduct evince a gender bias. ECF No. 49 at 13-14.

In evaluating Title IX claims, courts often look to the body of law developed under Title VI and Title VII. Rey v. Univ. of Pittsburgh Sch. of Dental Med., 182 F. Supp. 3d 282, 293 (W.D. Pa. 2016). "Under that framework, '[a] plaintiff may prove gender discrimination by direct evidence as set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 244–46, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989), as modified by the Civil Rights Act of 1991, or indirectly through the familiar burden-shifting framework set forth in McDonnell Douglas Corp.'" Id. (quoting Thompson v. Tractor Supply Co., No. 10-234, 2011 WL 4433268, at *5 (W.D. Pa. Sept. 21, 2011); see also Connelly v. Lane Const. Corp., 809 F.3d 780, 787 & n. 5 (3d Cir. 2016)). "'Direct evidence' is evidence sufficient to allow the jury to find that 'the decisionmakers placed substantial negative reliance on [gender] in reaching their decision.'" Id. at 293 (citations omitted). "Statements by a non-decisionmaker or a decisionmaker unrelated to the decisional process itself are not direct evidence. To be sure, [s]tray remarks in the [particular setting], statements by nondecisionmakers, or even statements by decisionmakers unrelated to the decisional process itself, do not constitute direct evidence of discrimination." Id. (internal citations and quotation marks omitted).

Here, Rullo contends that there is sufficient direct evidence of discrimination in the statements and actions by University officials charged with investigating Rullo's complaints to establish gender-based hostility that impeded her ability to attend class and remain enrolled in the Law School. Rullo points to her testimony regarding Deasy's statements immediately after the

September 2nd altercation, when he discounted her obvious bruises and told her to stop acting like a victim, his placement of a sign-up sheet in front of Mendieta requiring her to stand in front of him while he glared at her, thereby subjecting her to intimidation and harassment, and Rzepecki's statements that she should refrain from posting feminist materials on social media and should expect sexually harassing remarks based upon her attire in a photograph. Rullo also points to the University's failure to consider evidence of her physical injuries and mental health diagnosis. Of significance, Rullo also notes the failure of the University to consider and address Professor Teeter's corroboration of Rullo's complaints of intimidating conduct by Mendieta and his friends which impeded her ability to enter assigned classes. Rullo contends that when viewed in the light most favorable to her, this evidence establishes conduct that constitutes more than isolated stray remarks and actions and is evidence of a pattern of discriminatory conduct. ECF No. 77 at 8-9. With consideration to the totality of the evidence presented, the Court finds that Rullo presents sufficient evidence, albeit barely, upon which a reasonable jury could conclude that the University intentionally discriminated against her based on her gender in violation of Title IX. Accordingly, the Motion for Summary Judgment as to the gender discrimination claim set forth in Count I is denied.

### B. Count II – Hostile Environment

At Count II of the Complaint, Rullo alleges that the University was "deliberately indifferent to known sexual harassment and the sexually hostile environment in which she suffered as a result of its failure to institute any accommodations for Plaintiff's safety." ECF No. 1 ¶ 62. Rullo contends that by September 7, 2016, the University was aware that Mendieta assaulted her and that it became aware of harassing, intimidating and threatening conduct taking place in the Law School. Based upon this information, Rullo contends the University should have provided her an

escort to attend class, counseled Mendieta and his friends regarding their treatment of her, investigated her complaints of Title IX violations, and provided a viable alternative to attend classes at the Law School.  Id.  As a result of its failure to take any of these steps, Rullo claims she had no option but to withdraw from the Law School.

The United States Supreme Court has held that Title IX may support a hostile environment claim against a recipient of federal funding for the manner in which it addresses student-on-student sexual harassment when the plaintiff can show (1) that the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to an educational opportunity or benefit, (2) that the funding recipient had actual knowledge of the sexual harassment, and (3) that the funding recipient was deliberately indifferent to the harassment. Davis v. Monroe Cty Bd of Educ., 526 U.S. 629, 650 (1999).  An institution's liability depends on whether an official with authority to institute corrective measures had actual notice of and was deliberately indifferent to the harasser's misconduct. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998).

As relevant here, "the deliberate indifference must, at a minimum 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." Davis v. Monroe, 526 U.S. at 645. Deliberate indifference requires a response (or failure to respond) that is "clearly unreasonable in light of the known circumstances." Id. at 649.  This does not mean, however, "that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." Id. at 648.   Rather, "the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable. This is not a mere 'reasonableness' standard, …. [i]n an appropriate case, there is no reason why courts, on a motion

to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." Id. at 648-49.

Against this framework, and construing the evidence in the light most favorable to Rullo as the nonmoving party, the Court finds that there is a genuine dispute of fact as to whether the University's response to Rullo's allegations of harassment was "clearly unreasonable in light of the known circumstances." First, the University fails to address whether the alleged harassment sustained by Rullo in the weeks following the September 2nd incident was "severe, pervasive, and objectively offensive" for Title IX purposes, and the Court therefore accepts Rullo's characterization of ongoing intimidation by Mendieta and Deasy and Rzepecki's dismissive and disparaging treatment as raising an issue of fact as to whether such conduct is objectively offensive. As to the second element, Rullo alleges that the University had actual knowledge that she suffered harassment and that such harassment was gender based, and yet failed to act to enable her continued attendance at school. To that end, Deasy acknowledged her facial bruising in the days immediately following the incident but discounted that she may have been the victim of gender-based violence or harassment as contended by Rullo. Additionally, Rullo was prevented from attending class despite being a recipient of a Protection from Abuse Order. Thereafter, Rullo suffered instances of intimidation by Mendieta and his friends that impeded her ability to enter or leave her classes, with at least one instance corroborated by Professor Teeter and reported to Rzepecki. Despite this information and, as alleged in the Complaint, because of her gender, the University failed to act for over three weeks to ensure Rullo could attend classes without intimidation or harassment. Such conduct, if proven, may lead a reasonable jury to conclude that the University's inaction caused Rullo to suffer frequent severe threatening or humiliating conduct

that unreasonably interfered with her ability to remain at the Law School. Therefore, the Motion for Summary Judgment as to the hostile environment claim set forth in Count II is denied.

### C. Count III – Retaliation

At Count III, Rullo alleges that after she submitted her Title IX complaint regarding her claims of unlawful discrimination against her by Mendieta, his friends, Deasy and Rzepecki, the University retaliated against her by treating her in a hostile manner and otherwise retaliated against her by excluding her from continued attendance for the remainder of the 2016-2017 academic year. In particular, Rullo points to alleged retaliatory treatment by Deasy and Rzepecki "based upon their actions and inactions, and the discipline leveled against Plaintiff," which she contends was severe, pervasive, and objectively offensive, and worked to bar her access to educational opportunities and benefits. Id. ¶ 54.

Federal courts have recognized the requisite elements necessary to establish a Title IX retaliation claim.

> To establish a prima facie case of retaliation, a plaintiff must show: (1) that he or she engaged in protected activity [under Title IX]; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action." S.K. v. North Allegheny School District, 168 F. Supp. 3d at 803-04 (citing Yan v. Penn State University, 529 Fed. Appx. 167, 171 (3d Cir. 2013)). Further, plaintiff must show "intentional conduct ... to recover on a claim of retaliation." Id. at 805. "The first step in any assessment of a retaliation claim is to identify what conduct, if any, a reasonable jury could causally link to the existence of retaliatory animus." Id. at 806 (citations omitted). Retaliatory animus is "(1) intentional conduct aimed at inflicting injury or harm (2) taken because of a complaint about a perceived form of prohibited conduct." Id. "Protected activities include complaints of sexual discrimination to the courts, government agencies, or the funding recipient." Dawn L. v. Greater Johnstown School Dist., 586 F. Supp. 2d 332, 374 (W.D. Pa. 2008) (citations omitted). "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" Frazer, 25 F. Supp. 3d at 615 (citing Cooper v. Menges, 541 Fed. Appx. 228, 232 (3d Cir. 2013)).

B.W. v. Career Tech. Ctr. of Lackawanna Cty., No. CV 3:19-1146, 2019 WL 6875493, at *3–4 (M.D. Pa. Dec. 17, 2019). The evidence must further establish that any alleged retaliatory conduct "might well have dissuaded a reasonable [student] from making or supporting a charge [or complaint about] of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

The University, in summary fashion, seeks the entry of judgment in its favor as to Rullo's retaliation claim based upon its assertion that it "handled Rullo's Title IX Complaint in a fair and equitable manner." ECF No. 49 at 16-17. The University further contends that it properly investigated Rullo's claims of Mendieta's harassing conduct. Finally, the University contends that Rullo's disagreement with the outcome of the investigation of the Title IX complaints does not give rise to an inference of unlawful retaliation. Id.

Rullo responds that the evidence is sufficient to raise an issue of fact regarding the pattern of antagonism leading to the disciplinary sanctions imposed after she filed her Title IX complaint regarding Deasy and Rzepecki's dismissive and offensive remarks, and the University's intentional failure to respond to intimidation and harassment by Mendieta and his friends, despite Teeter's corroboration. ECF No. 77 at 8, 11. Based upon the evidence of record, again construed in the light most favorable to Rullo as the nonmoving party, the Court agrees that a reasonable jury may conclude that Rullo engaged in conduct protected by Title IX; that in doing so, she suffered adverse action(s) by the University in being forced to request a leave of absence and in being dismissed for the academic year; and that there was a causal connection between Rullo's protected conduct of filing her Title IX Complaint and being subjected to the identified adverse actions by the University. Accordingly, the Motion for Summary Judgment as to the retaliation claim set forth in Count III is denied.

**IV.    CONCLUSION**

For the foregoing reasons, the University's Motion for Summary Judgment, ECF No. 47, seeking the entry of judgment in its favor as to each of Rullo's claims is properly denied. Accordingly, an appropriate order follows.

## ORDER

AND NOW, this 26th day of March, 2020, upon consideration of the Motion for Summary Judgment filed on behalf of Defendant University of Pittsburgh – of the Commonwealth System of Higher Education,  ECF No. 47, and the parties' joint and separate concise statements of facts, exhibits, and briefs in support and opposition thereto, ECF Nos. 48, 49, 52, 53, 61, 62, 68, 70, 74 and 77, and for the reasons set forth in the accompanying Opinion, it is HEREBY ORDERED that the Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.


BY THE COURT:

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
United States Magistrate Judge


cc:     All counsel of record by Notice of Electronic Filing