**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HANNAH RULLO,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF PITTSBURGH – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, *A Commonwealth of Pennsylvania Non-Profit Corporation*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 17-1380<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 104 |

**MEMORANDUM ORDER**

Presently before the Court is the Motion in Limine to Preclude Dr. Paul Mason from Testifying as an Expert Witness ("Motion to Preclude Dr. Mason") filed by Defendant University of Pittsburgh (the "University"). ECF No. 104. Plaintiff Hannah Rullo ("Rullo") opposes the motion. ECF No. 119.

## I. BACKGROUND

### A. Rullo's claims

The instant action was brought by Rullo, a former law student at the University, alleging that the University violated her rights to be free of gender bias, retaliation, and hostile environment under Title IX, 20 U.S.C. § 1681(a). Rullo's claims arise out of the University's alleged mishandling of her Title IX complaint and her allegations of assault and battery against Leonel Mendieta ("Mendieta"), a fellow law student. Following ruling on the University's Motion for Summary Judgment, the case is scheduled for trial relative to Rullo's Title IX claims of gender discrimination (Count I), hostile environment (Count II), and retaliation (Count III). ECF No. 78.

**B. Alleged Damages**

In the Statement of Damages section of her Pretrial Statement, Rullo states that she will seek four categories of damages at time of trial.

1. Lost educational opportunities due to leaving the University prematurely and the University's treatment of Rullo causing her to complete law school one year later than anticipated at a less competitive institution, Florida Coastal School of Law ("Florida Coastal"), which caused her to suffer loss of future earnings and earnings capacity.
2. Compensatory and other non-economic damages caused by the behavior of the University and lack of adequate investigation of Rullo's Title IX complaint, including emotional distress, damage to reputation, fear, anxiety and trauma.
3. Equitable relief in the form of correction of Rullo's scholastic record at the University to reflect no Title IX violation by Rullo.
4. Attorneys' fees and costs.

ECF No. 92 at 7.

**C. Dr. Mason**

Rullo retained Dr. Mason to testify regarding economic losses related to the first category of damages: her lost educational and career opportunities due to the delayed completion of her law degree and attending a less competitive law school, Florida Coastal. Id. Dr. Mason is the Dean and Professor of Economics at the Johnson School of Business at McMurry University, and he holds a Masters degree from the University of Delaware and a Doctorate degree in Economics from the University of Texas. ECF No. 104-4 at 6, 14-27. He also served as Acting

Dean, Department Chair and as an Endowed Professor of Economics at the University of North Florida. Id. at 15.

**1. Expert report dated May 20, 2019**

Dr. Mason issued his original expert report on May 20, 2019. ECF No. 104-4. In his report, he opines as to Rullo's anticipated lost wages as a result of (1) the difference in her earning potential caused by attending Florida Coastal instead of the University for both public and private sector employment; and (2) the difference in her earning potential as a result of her diminished ability to become a healthcare attorney, also based on her attendance at Florida Coastal rather than the University.

As to the first category, Dr. Mason relied upon earnings data from ILRG.com ("ILRG"), which purports to provide median salaries of new attorneys based on the law schools they attended. Id. at 7. With respect to the second category, Dr. Mason relied upon salary data for healthcare attorneys available on payscale.com ("PayScale"). Id. In estimating Rullo's anticipated future lost income, Dr. Mason assumed a flat two percent annual growth in wages, based on the 2019 earnings growth rate for hourly workers as reported by the U.S. Bureau of Labor Statistics. ECF No. 119-2 at 19-20.

**2. Supplemental Reports**

On June 12, 2020, Rullo provided an updated expert report from Dr. Mason. ECF No. 86-2. At the University's request, ECF No. 86, the Court conducted a telephonic status conference with counsel for the parties on June 17, 2020 to address the University's concerns regarding this report. ECF No. 89. The University indicated that, after the close of business on Friday, with the deposition of Rullo's expert scheduled for Monday, Rullo's counsel provided defense counsel with a new damages calculation prepared by Dr. Mason. Id. ¶ 3. Although Dr.

Mason previously relied upon data from PayScale and ILRG to support his opinion, it became clear during the course of his June 15, 2020 deposition that he instead relied upon data from U.S. News and World Report in this "updated" report. Id.

Upon hearing from counsel for both parties, the Court concluded that the "updated" report was based on a complete change in the foundational basis for Dr. Mason's opinion. Therefore, the report was not an "update," but a new report provided out of time. The Court indicated that Rullo was bound by Dr. Mason's original expert report dated May 20, 2019. However, when ILRG and/or PayScale released their expected annual data update within the next week, Dr. Mason was permitted to provide a supplemental report based on updated data from these two original sources. The Court permitted defense counsel to complete Dr. Mason's deposition after receiving the supplemental report, and it also permitted the University's expert, Mr. Bummer, to file a supplemental responsive report within a reasonable period of time. Upon issuance of the updated ILRG and PayScale data, the Court directed the parties to meet and confer to submit a joint proposed scheduling order to complete the depositions, in the event they could not be completed by the July 1, 2020 deadline for completing expert depositions. The Court further instructed that Dr. Mason was not permitted to newly rely upon any data that was already available to him as of May 2019. Id. ¶ 5.

On July 1, 2020, the parties submitted a Joint Motion for Extension of Time for Expert Depositions, which the Court granted. ECF Nos. 90 and 91. In accordance with the revised scheduling order, Dr. Mason submitted a second supplemental expert report, ECF No. 104-5, and his deposition continued on July 9, 2020, ECF No. 104-2.

During his July 9, 2020 deposition, counsel for the University questioned Dr. Mason regarding the salary data he used to prepare his second supplemental report. Dr. Mason testified

that he used data from ILRG. Id. at 4. With respect to the healthcare attorney portion of his analysis, he testified that he relied upon PayScale data, as reported in a Hofstra University publication. Id. at 112. Dr. Mason did not consult the PayScale website directly to supplement his prior analysis. Id.

## II. MOTION TO PRECLUDE DR. MASON

In the instant Motion, the University seeks to preclude Dr. Mason from testifying as a damages expert. ECF No. 104. It argues that Dr. Mason's testimony should be excluded pursuant to Federal Rules of Evidence 702 and 403 because (1) he is not qualified to opine as an expert on the differences in median salaries for law school graduates; (2) his opinion is based on unsupported and unverified "Google results," instead of sufficiently reliable data and facts; and (3) permitting him to testify will unfairly prejudice the University. Id. at 1.

## III. DISCUSSION

### A. Federal Rule of Evidence 702

The Court first considers the University's argument with respect to Rule 702. Rule 702 provides that a qualified expert witness may testify to the extent that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In short, Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). In order to satisfy the qualification requirement, a witness must possess specialized

expertise. Id. Courts have interpreted this requirement liberally, noting that "a broad range of knowledge, skills, and training qualify an expert." Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)) (internal quotations omitted).

For an expert's testimony to be reliable, it "must be based on [] methods and procedures . . . rather than subjective belief or speculation." In re TMI Litig., 193 F.3d 613, 670 (3d Cir. 1994). "[T]he admissibility inquiry thus focuses on principles and methodology, not on the conclusions generated by principles and methodology." Id. at 665. Moreover, expert testimony "must be accompanied by a sufficient factual foundation before it can be submitted to the jury." Elcock v. Kmart Corp., 233 F.3d 734, 754 (3d Cir. 2000) (quoting Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 98 (3d Cir. 1983)) (internal quotations omitted).

Finally, Rule 702 requires that the expert testimony fit the issues in the case. An expert's testimony "fits" a case when it is "relevant for the purposes of the case and . . . assist[s] the trier of fact." Schneider, 320 F.3d at 404.

**1. Qualification**

In support of its Motion, the University argues that Dr. Mason is not qualified to testify regarding Rullo's economic damages, because he lacks any specialized knowledge of legal earnings, and he does not know what a healthcare attorney does. ECF No. 105 at 1-2.

The Court disagrees. The qualification requirement is interpreted liberally, and a broad range of skills and training can qualify a witness as an expert. See Schneider, 320 F.3d at 404. Here, as Rullo points out in her response, ECF No. 119 at 2, Dr. Mason holds Masters and Doctorate degrees in economics; he has worked for approximately four decades as a professor of statistics, finance and economics; and he has conducted research on the differences in salaries by

law school. Based on his education and experience, Dr. Mason has requisite experience that qualifies him to opine regarding Rullo's economic damages in this case.

Although Dr. Mason does not have expertise specific to the legal job market, the University cites no authority to support a finding that such particularized experience is required. To the contrary, the United States Courts of Appeals for the Third Circuit has held that "[i]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (citing Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters)); see also Floorgraphics, Inc. v. News Am. Marketing In-Store Servs., Inc., 546 F. Supp. 2d 155, 167 (D. N.J. 2008) ("[A]n expert opining on a general matter is not required to have experience that is narrowly tailored to the specific industry in question.").

Because Dr. Mason satisfies the liberal minimum qualifications under Rule 702, the level of his expertise may go to the credibility and weight of his testimony, as opposed to the admissibility. See Kannankeril v. Terminix Intern., Inc., 128 F.3d 802, 809 (3d Cir. 1997). As such, the proper avenue for the University to challenge Dr. Mason's legal industry expertise, as appropriate, is through cross-examination at trial. Accordingly, this factor does not support precluding Dr. Mason's testimony.

**2. Reliability**

The University also challenges the reliability of Dr. Mason's opinion. In particular, the University argues that Dr. Mason did nothing to confirm the accuracy of the PayScale or ILRG

data that he relied upon, and he did not know the specific methodology these sources used to collect the data. ECF No. 104 at 2-3. In addition, the University argues that Dr. Mason wrongfully inflated Rullo's damages calculations by applying a growth rate for hourly, not salaried, workers, and he did not account for reportedly slowed growth in the legal profession in Spring 2020. Id. at 9-20. The University also contends that Dr. Mason failed to consider relevant information in his analysis, including Rullo's class rank[1] and familial connections, and that Dr. Mason had no factual basis for his assumption that Rullo was purportedly less likely to become a healthcare attorney simply because she attended Florida Coastal instead of Pitt. ECF No. 105 at 3-4. Finally, the University argues that Dr. Mason improperly relied upon a Hofstra University article citing PayScale data in his supplemental report, because it does not match the updated salary on the PayScale website and violates the Court's directive, ECF No. 89, regarding permissible sources for Dr. Mason's supplemental report. ECF No. 104 at 7-9.

In response, Rullo argues that Dr. Mason's opinion is properly supported, noting his reliance on both the ILRG and PayScale data, and the fact that ILRG publishes school data on a yearly basis for use by students in deciding where to enroll. ECF No. 119 at 2-3. Rullo argues that Dr. Mason testified it was reasonable to rely on these sources, and the University provides no evidence to the contrary beyond its own suspicions. Id. at 4. The two percent wage growth assumption he used, Rullo argues, is reasonably derived from the U.S. Bureau of Labor Statistics, and is a conservative estimate given that hourly wage growth is historical smaller than salaried wage growth. Id. at 3-4. With respect to whether Rullo was less likely to become a healthcare attorney by attending Florida Coastal, Rullo argues that Dr. Mason could not recall the basis for this assumption because the University's counsel would not permit him to access his

[1] By separate memorandum order, the Court has addressed the admissibility of the University's calculation of Rullo's class rank. ECF No. 149.

notes during the video deposition. Id. at 3. To the extent the University seeks to challenge the basis for Dr. Mason's opinion, she argues, it can do so through cross-examination.

Upon review, the Court finds that Dr. Mason's opinion is reliable. In support of his opinion, Dr. Mason relies upon information from two widely available data sources, ILRG and PayScale, which have compiled salary information based on surveys of respondents. According to Dr. Mason, ILRG publishes school-by-school salary data on an annual basis, for the purpose of informing law students deciding where to enroll in law school. ECF No. 119-2 at 11. The survey data is compiled from law school graduates employed in the legal profession ten months after their graduation. Id. According to its website, PayScale "administers the largest real-time salary survey in the world with more than 150,000 new survey records added each month."[2] Using this data, Dr. Mason then assumed a growth rate of two percent, which was based on the U.S. Bureau of Labor Statistics growth rate for hourly workers. Dr. Mason testified that he considered this a "conservative estimate," given that growth rates for hourly workers is historically smaller than salaried wage growth, and that it is a source he routinely uses as an expert to generate estimates of earning growth. Id. at 20. Accordingly, the record reflects Dr. Mason supports his opinion with data that is rationally related to his analysis.

Although the University argues that Dr. Mason did not sufficiently confirm the accuracy or methodology of the two sources he used, and he did not consider all relevant factors in forming his assumptions, the United States Court of Appeals for the Third Circuit has cautioned that "[t]he standard for reliability is not that high," and it does not require that expert opinion "be supported by the best foundation, methodology, or research." Wojciechowski v. Musial, 829 F. App'x 574, 576 (3d Cir. 2020) (quoting Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 80-

---

[2] Information regarding the methodology Payscale uses to collect its data is available on its website, at payscale.com/about/methodology (last visited February 11, 2021).

81 (3d Cir. 2017)) (internal quotations omitted). Experts are "granted wide latitude in determining what data is needed to reach a conclusion." Brill v. Marandola, 540 F. Supp. 2d 563, 568 (E.D. Pa. 2008) (quoting JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., No. 97-cv-0652, 1998 WL 175888, at *6 (E.D. Pa. Apr. 15, 1998)) (internal quotations omitted). As such, this standard simply requires that the opinion rests on "good grounds." Wojciechowski, 829 F. App'x at 576 (citing Karlo, 849 F.3d at 83).

"Assuming a rational connection between the data and the opinion—as there [is] here—an expert's reliance on [allegedly] faulty information is a matter to be explored on cross-examination; it does not go to admissibility." Apotext, Inc. v. Cephalon, Inc., 321 F.R.D. 220, 233 (E.D. Pa. 2017) (citing Manpower, Inc. v. Ins. Co. of Pa., 732 F.3d 796, 809 (7th Cir. 2013)); see also Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weakness through effective cross-examination"); Synergetics, Inc v. Hurst, 477 F.3d 949, 955-56 (8th Cir. 2007) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination") (citations omitted). Whether Dr. Mason relied on the best data in forming his opinions, and the weight and credibility to be given to his testimony, then, are issues for cross-examination at trial.

To the extent the University argues that Dr. Mason could not testify why Rullo was arguably less likely to become a healthcare attorney because she attended Florida Coastal, instead of the University, the Court notes Dr. Mason's testimony that he could not recall the

basis for this assumption without his notes. Rullo will, of course, be required to establish the appropriate foundation for this testimony at time of trial.

With respect to the University's concern that Dr. Mason did not rely upon permissible sources for his supplemental report, the Court notes that Dr. Mason purported to use PayScale data as cited in a secondary source, and the record before the Court does not establish that he deviated from the foundation of his original report. Dr. Mason will also be required to establish the appropriate foundation for his use of this data at the time of trial.

**3. Fit**

Finally, the Court finds that Dr. Mason's testimony satisfies the "fit" requirement. Dr. Mason's testimony is "relevant for the purposes of the case" and will "assist the trier of fact," because it relates to Rullo's alleged economic damages as a result of the University's misconduct in this case. Accordingly, the Court holds that Dr. Mason's testimony is not precluded under Rule 702.

**B. Federal Rule of Evidence 403**

In the alternative, the University argues that Dr. Mason's testimony should be precluded under Rule 403 because it will unfairly prejudice the University. Rule 403 provides:

> The Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

The Court finds that preclusion also is not warranted under Rule 403. For the reasons previously discussed, the Court finds that Dr. Mason's testimony is sufficiently reliable to be presented at trial, and it is relevant to the jury's consideration of Rullo's damages in this action. Although the University challenges certain factual assumptions, and whether Dr. Mason relies on

appropriate sources, it can cross-examine him with respect to these purported weaknesses. The University can also present its own expert testimony to provide additional context to the jury. Under the circumstances, the Court does not find that the probative value of Dr. Mason's testimony is substantially outweighed by the danger of unfair prejudice.

## IV. CONCLUSION

For the reasons set forth herein, IT IS HEREBY ORDERED that the Motion in Limine to Preclude Dr. Paul Mason from Testifying as an Expert Witness, ECF No. 104, is DENIED.

Dated: February 18, 2021 BY THE COURT:

***/s/ Maureen P. Kelly***
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF.