IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HANNAH RULLO, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 17-1380 |
| ) | Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | Re: ECF No. 106 |
| UNIVERSITY OF PITTSBURGH – OF THE ) | |
| COMMONWEALTH SYSTEM OF HIGHER ) | |
| EDUCATION, *A Commonwealth of* ) | |
| *Pennsylvania Non-Profit Corporation*, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Presently before the Court is the Motion in Limine to Preclude Evidence Regarding Plaintiff's Potential Earnings as a Healthcare Attorney ("Motion to Preclude Evidence of Potential Healthcare Attorney Earnings") filed by Defendant University of Pittsburgh (the "University"). ECF No. 106. Plaintiff Hannah Rullo ("Rullo") opposes the motion. ECF No. 120.

### I. BACKGROUND

**A. Rullo's claims**

The instant action was brought by Rullo, a former law student at the University, alleging that the University violated her rights to be free of gender bias, retaliation, and hostile environment under Title IX, 20 U.S.C. § 1681(a). Rullo's claims arise out of the University's alleged mishandling of her Title IX complaint and her allegations of assault and battery against Leonel Mendieta ("Mendieta"), a fellow law student. Following ruling on the University's Motion for Summary Judgment, the case is scheduled for trial relative to Rullo's Title IX claims

of gender discrimination (Count I), hostile environment (Count II), and retaliation (Count III). ECF No. 78.

### B. Alleged Damages

In the Statement of Damages section of her Pretrial Statement, Rullo states that she will seek four categories of damages at time of trial.

1. Lost educational opportunities due to leaving the University prematurely and the University's treatment of Rullo causing her to complete law school one year later than anticipated at a less competitive institution, Florida Coastal School of Law ("Florida Coastal"), which caused her to suffer loss of future earnings and earnings capacity.

2. Compensatory and other non-economic damages caused by the behavior of the University and lack of adequate investigation of Rullo's Title IX complaint, including emotional distress, damage to reputation, fear, anxiety and trauma.

3. Equitable relief in the form of correction of Rullo's scholastic record at the University to reflect no Title IX violation by Rullo.

4. Attorneys' fees and costs.

ECF No. 92 at 7.

### C. Dr. Mason

Rullo retained Dr. Paul Mason to testify regarding economic losses related to the first category of damages: her lost educational and career opportunities due to the delayed completion of her law degree and attending a less competitive law school, Florida Coastal. Id. Dr. Mason is a Dean and Professor of Economics at the Johnson School of Business at McMurry University, and he holds a Masters degree from the University of Delaware and a Doctorate degree in

Economics from the University of Texas. ECF No. 104-4 at 6, 14-27. He also served as Acting Dean, Department Chair and as an Endowed Professor of Economics at the University of North Florida. Id. at 15.

### 1. Expert report dated May 20, 2019

Dr. Mason issued his original expert report on May 20, 2019. ECF No. 104-4. In his report, he opined as to Rullo's anticipated lost wages as a result of (1) the difference in her earning potential caused by attending Florida Coastal instead of the University for both public and private sector employment; and (2) the difference in her earning potential as a result of her diminished ability to become a healthcare attorney, also based on her attendance at Florida Coastal rather than the University.

As to the first category, Dr. Mason relied upon earnings data from ILRG.com ("ILRG"), which purports to provide median salaries of new attorneys based on the law schools they attended. Id. at 7. With respect to the second category, Dr. Mason relied upon salary data for healthcare attorneys available on payscale.com ("PayScale"). Id. In estimating Rullo's anticipated future lost income, Dr. Mason assumed a flat two percent annual growth in wages, based on the 2019 earnings growth rate for hourly workers as reported by the U.S. Bureau of Labor Statistics. ECF No. 119-2 at 19-20.

### 2. Supplemental Reports

On June 12, 2020, Rullo provided an updated expert report from Dr. Mason. ECF No. 86-2. At the University's request, ECF No. 86, the Court conducted a telephonic status conference with counsel for the parties on June 17, 2020 to address the University's concerns regarding this report. ECF No. 89. The University indicated that, after the close of business on Friday, with the deposition of Rullo's expert scheduled for Monday, Rullo's counsel provided

defense counsel with a new damages calculation prepared by Dr. Mason. Id. ¶ 3. Although Dr. Mason previously relied upon data from PayScale and ILRG to support his opinion, it became clear during the course of his June 15, 2020 deposition that he instead relied upon data from U.S. News and World Report in this "updated" report. Id.

Upon hearing from counsel for both parties, the Court concluded that the "updated" report was based on a complete change in the foundational basis for Dr. Mason's opinion. Therefore, the report was not an "update," but a new report provided out of time. The Court indicated that Rullo was bound by Dr. Mason's original expert report dated May 20, 2019. However, when ILRG and/or PayScale released their expected annual data update within the next week, Dr. Mason was permitted to provide a supplemental report based on updated data from these two original sources. The Court permitted defense counsel to complete Dr. Mason's deposition after receiving the supplemental report, and it also permitted the University's expert, Mr. Bummer, to file a supplemental responsive report within a reasonable period of time. Upon issuance of the updated ILRG and PayScale data, the Court directed the parties to meet and confer to submit a joint proposed scheduling order to complete the depositions, in the event they could not be completed by the July 1, 2020 deadline for completing expert depositions. The Court further instructed that Dr. Mason was not permitted to newly rely upon any data that was already available to him as of May 2019. Id. ¶ 5.

On July 1, 2020, the parties submitted a Joint Motion for Extension of Time for Expert Depositions, which the Court granted. ECF Nos. 90 and 91. In accordance with the revised scheduling order, Dr. Mason submitted a second supplemental expert report, ECF No. 104-5, and his deposition continued on July 9, 2020, ECF No. 104-2.

During his July 9, 2020 deposition, counsel for the University questioned Dr. Mason regarding the salary data he used to prepare his second supplemental report. Dr. Mason testified that he used data from ILRG. Id. at 4. With respect to the healthcare attorney portion of his analysis, he testified that he relied upon PayScale data, as reported in a Hofstra University publication. Id. at 112. Dr. Mason did not consult the PayScale website directly to supplement his prior analysis. Id.

## II. MOTION TO PRECLUDE EVIDENCE OF POTENTIAL HEALTHCARE ATTORNEY EARNINGS

In the instant Motion, the University seeks to preclude any testimony or evidence by Dr. Mason regarding Rullo's potential earnings as a healthcare law attorney pursuant to Federal Rules of Evidence 702 and 403. ECF Nos. 106 and 107. The University asserts three arguments in support of this Motion: (1) Dr. Mason violated the Court's instruction regarding appropriate sources when compiling the healthcare law analysis in his report; (2) the information that Dr. Mason relies upon for the "healthcare law" portion of his analysis is unreliable; and (3) allowing such evidence would mislead the jury and unfairly prejudice the University. ECF No. 106 at 1.

The University also filed a separate motion seeking to preclude Dr. Mason's testimony in its entirety, ECF No. 104, and it indicates that it seeks the relief requested here in the alternative. Id. at 1 n. 1.

## III. DISCUSSION

In support of its Motion, the University raises substantially the same arguments that it presents in its Motion in Limine to Preclude Dr. Mason from Testifying as an Expert Witness, ECF No. 104. In particular, the University argues that Dr. Mason did not confirm the accuracy of his two sources, ILRG and PayScale, and there is nothing in the record indicating that these sources are, in fact, reliable. ECF No. 106 at 2. The University also argues that Dr. Mason's

5

opinion is not informed by any experience with legal earnings. Id. at 3. In addition, the University argues, Dr. Mason has improperly relied upon salary information contained in a Hofstra University publication, instead of referring to PayScale directly. It argues that this violates the Court's directive, ECF No. 89, regarding permissible sources for Dr. Mason's supplemental report, and it wrongfully inflates Rullo's estimated damages, because the Hofstra University publication does not reflect the current PayScale figures. ECF No. 107 at 3-4. Finally, the University argues that the portion of Dr. Mason's report regarding potential earnings for healthcare attorneys is divorced from the facts of this case because Rullo is just as likely to become a healthcare attorney having graduated from Florida Coastal. Id. The University asserts that Dr. Mason could not recall the basis for this assumption at his deposition, and he implied that it may have been guided by Rullo's counsel. Id. at 4. Based on this, the University argues that Dr. Mason's opinion with respect to potential lost earnings relative to healthcare attorneys is unreliable and unfairly prejudicial.

In Response, Rullo argues that Dr. Mason holds advanced degrees in economics; has been a professor of statistics, finance, and economics for approximately four decades; has published extensively on the subjects of economics, finance and earnings valuations; and has conducted research on the differences in law schools and salaries of law graduations in preparation for his opinion in this case. ECF No. 120 at 2. Although he does not have prior expertise specific to healthcare attorney earnings, Rullo argues that this is not required to qualify him as an expert. In addition, Rullo argues that it is appropriate under Federal Rule of Evidence 403 for experts to rely on outside facts or data of a type that experts in the field would rely upon, and Dr. Mason has testified how it was reasonable for him to rely on the sources he cites. Id. at 4. To the extent the University claims that PayScale data is unreliable, or that the Hofstra

University publication is not accurate, Rullo argues, the proper way for the University to attack Dr. Mason's reliance is though effective cross-examination or the presentation of competing evidence—not by precluding his testimony.  Id. at 4.  Finally, as to Dr. Mason's inability to recall the basis for the assumption that Rullo was less likely to become a healthcare attorney as a result of graduating from Florida Coastal, she argues that he could not recall the basis for this assumption because the University's counsel did not permit him to access his notes during the video deposition, and the scope of Dr. Mason's opinion does not include determining whether graduates of Florida Coastal can gain employment as healthcare attorneys.  Id. at 3, 5.  Rullo notes that she will, of course, be required to present evidence to lay the proper foundation for this testimony at trial.  Id.

### A. Federal Rule of Evidence 702

The University seeks to preclude Dr. Mason's testimony on the topic of Rullo's potential lost earnings as a healthcare attorney pursuant to Federal Rules of Evidence 702 and 403.  The Court first considers the University's argument under Rule 702.

Rule 702 provides that a qualified expert witness may testify to the extent that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In short, Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit."  Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).  In order to satisfy the qualification requirement, a witness must possess specialized

expertise.  Id.  Courts have interpreted this requirement liberally, noting that "a broad range of knowledge, skills, and training qualify an expert."  Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)) (internal quotations omitted).

For an expert's testimony to be reliable, it "must be based on [] methods and procedures . . . rather than subjective belief or speculation."  In re TMI Litig., 193 F.3d 613, 670 (3d Cir. 1994).  "[T]he admissibility inquiry thus focuses on principles and methodology, not on the conclusions generated by principles and methodology."  Id. at 665.  Moreover, expert testimony "must be accompanied by a sufficient factual foundation before it can be submitted to the jury."  Elcock v. Kmart Corp., 233 F.3d 734, 754 (3d Cir. 2000) (quoting Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 98 (3d Cir. 1983)) (internal quotations omitted).

Finally, Rule 702 requires that the expert testimony fit the issues in the case.  An expert's testimony "fits" a case when it is "relevant for the purposes of the case and . . . assist[s] the trier of fact."  Schneider, 320 F.3d at 404.

Upon review, the University raises substantially the same arguments that this Court previously considered, and rejected, in the University's separately filed motion seeking to preclude Dr. Mason's testimony.  See ECF No. 151.  As the Court previously held, Dr. Mason's testimony is not inadmissible pursuant to Rule 702.  The same conclusion applies with respect to the portion of Dr. Mason's opinion regarding her potential earnings as a healthcare attorney.

### 1. Qualification

First, Dr. Mason is qualified to testify regarding Rullo's anticipated future lost income, which includes her potential earnings as a healthcare attorney.  This requirement is interpreted liberally, and a broad range of skills and training can qualify a witness as an expert.  See Schneider, 320 F.3d at 404.  As the Court previously held, based on his education and

experience, Dr. Mason has requisite experience that qualifies him to opine regarding Rullo's economic damages in this case.

Although Dr. Mason does not have expertise specific to healthcare attorneys, or to the legal job market in general, the University cites no authority to support a finding that such particularized experience is required. Rather, the United States Court of Appeals for Third Circuit has instructed that "[i]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (citing Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters)); see also Floorgraphics, Inc. v. News Am. Marketing In-Store Servs., Inc., 546 F. Supp. 2d 155, 167 (D. N.J. 2008) ("[A]n expert opining on a general matter is not required to have experience that is narrowly tailored to the specific industry in question.").

Because Dr. Mason satisfies the liberal minimum qualifications under Rule 702, the level of his expertise relative to healthcare attorneys may go to the credibility and weight of his testimony, as opposed to the admissibility. As such, the proper avenue for the University to challenge Dr. Mason's expertise, as appropriate, is through cross-examination at trial. Accordingly, this factor does not support precluding any portion of Dr. Mason's testimony.

### 2. Reliability

Second, as the Court previously concluded, Dr. Mason's opinion is also reliable. With respect to the healthcare attorney earnings portion of his analysis, Dr. Mason relies upon data from a widely available data source, PayScale, which compiles salary information based on

surveys of respondents. According to its website, PayScale "administers the largest real-time salary survey in the world with more than 150,000 new survey records added each month."[1] Using this data, Dr. Mason then assumed a growth rate of two percent, which was based on the U.S. Bureau of Labor Statistics growth rate for hourly workers. Dr. Mason testified that he considered this a "conservative estimate," given that growth rates for hourly workers is historically smaller than salaried wage growth, and that it is a source he routinely uses as an expert to generate estimates of earning growth. Id. at 20. Accordingly, the record reflects Dr. Mason supports his opinion with data that is rationally related to his analysis.

Although the University argues that Dr. Mason did not sufficiently confirm the accuracy or methodology of the sources he used, and he did not consider all relevant factors in forming his assumptions, the United States Court of Appeals for the Third Circuit has cautioned that "[t]he standard for reliability is not that high," and it does not require that expert opinion "be supported by the best foundation, methodology, or research." Wojciechowski v. Musial, 829 F. App'x 574, 576 (3d Cir. 2020) (quoting Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 80-81 (3d Cir. 2017)) (internal quotations omitted). Experts are "granted wide latitude in determining what data is needed to reach a conclusion." Brill v. Marandola, 540 F. Supp. 2d 563, 568 (E.D. Pa. 2008) (quoting JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., No. 97-cv-0652, 1998 WL 175888, at *6 (E.D. Pa. Apr. 15, 1998)) (internal quotations omitted). As such, this standard simply requires that the opinion rests on "good grounds." Wojciechowski, 829 F. App'x at 576 (citing Karlo, 849 F.3d at 83).

"Assuming a rational connection between the data and the opinion—as there [is] here— an expert's reliance on [allegedly] faulty information is a matter to be explored on cross-

---

[1] Information regarding the methodology Payscale uses to collect its data is available on its website, at payscale.com/about/methodology (last visited February 11, 2021).

examination; it does not go to admissibility." Apotext, Inc. v. Cephalon, Inc., 321 F.R.D. 220, 233 (E.D. Pa. 2017) (citing Manpower, Inc. v. Ins. Co. of Pa., 732 F.3d 796, 809 (7th Cir. 2013)); see also Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weakness through effective cross-examination"); Synergetics, Inc v. Hurst, 477 F.3d 949, 955-56 (8th Cir. 2007) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination") (citations omitted). Whether Dr. Mason relied on the best data in forming his opinions regarding Rullo's potential lost earnings as a healthcare attorney, and the weight and credibility to be given to his testimony, then, are issues for cross-examination at trial.

To the extent the University argues that Dr. Mason could not testify why Rullo was arguably less likely to become a healthcare attorney because she attended Florida Coastal, instead of the University, the Court notes Dr. Mason's testimony that he could not recall the basis for this assumption without his notes, and that additional evidence will be introduced to establish this point at trial. Rullo will, of course, be required to establish the appropriate foundation for this testimony at the time of trial.

With respect to the University's concern that Dr. Mason did not rely upon permissible sources for his supplemental report, the Court notes that Dr. Mason purported to use PayScale data as cited in a secondary source, and the record before the Court does not establish that he deviated from the foundation of his original report. Dr. Mason will also be required to establish the appropriate foundation for his use of this data at the time of trial.

3. Fit

Finally, Dr. Mason's opinion also satisfies the "fit" requirement. Dr. Mason's testimony is "relevant for purposes of the case" and will "assist the trier of fact," because it relates to Rullo's alleged economic damages as a result of the University's misconduct in this case. Accordingly, the Court holds that Dr. Mason's testimony relative to the healthcare attorney portion of his analysis is not precluded under Rule 702.

B. Federal Rule of Evidence 403

In the alternative, the University argues that Dr. Mason's healthcare attorney testimony should precluded under Rule 403 because it will unfairly prejudice the University. Rule 403 provides:

> The Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Upon review, the Court finds that precluding Dr. Mason's testimony relative to the healthcare attorney portion of his analysis is also not warranted under Rule 403. For the reasons previously discussed, the Court finds that Dr. Mason's testimony is sufficiently reliable to be presented at trial, and it is relevant to the jury's consideration of Rullo's damages in this action. Although the University challenges certain factual assumptions, and whether Dr. Mason relies on appropriate sources, it can cross-examine him with respect to these purported weaknesses. The University can also present its own expert testimony to provide additional context to the jury. Under the circumstances, the Court does not find that the probative value of Dr. Mason's testimony is substantially outweighed by the danger of unfair prejudice.

## IV.  CONCLUSION

For the reasons set forth herein, IT IS HEREBY ORDERED that the Motion in Limine to Preclude Evidence Regarding Plaintiff's Potential Earnings as a Healthcare Attorney, ECF No. 106, is DENIED.

Dated:  February 18, 2021                             BY THE COURT:

                                                           */s/ Maureen P. Kelly*
                                                          MAUREEN P. KELLY
                                                          UNITED STATES MAGISTRATE JUDGE

cc:  All counsel of record via CM/ECF.